KC **FILED**
NOV 21 2007
Nov. 21, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JH

| | |
|---|---|
| Ala Mohammad,<br><br>           Plaintiff,<br><br>v.<br><br>Chicago Police Department,<br><br>           Defendant. | 07CV6587<br>JUDGE MANNING<br>MAGISTRATE JUDGE COLE |

### COMPLAINT

NOW COMES Plaintiff, ALA MOHAMMAD ("Plaintiff"), by and through undersigned counsel, and complains of Defendant CHICAGO POLICE DEPARTMENT ("Defendant") as follows:

### INTRODUCTION

1. Plaintiff seeks redress for religion, national origin, and ancestry discrimination and retaliation. This case is brought for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, and pursuant to 42 U.S.C. § 1981, as amended.

### PARTIES

2. Plaintiff is a Muslim male of Middle-Eastern origin and Arab ancestry. He presently resides in the City of Bourbonnais, County of Kankakee, State of Illinois.

3. Defendant is a municipal entity of the City of Chicago, doing business in, and maintaining its principal office at 3510 South Michigan Avenue, in the City of Chicago, County of Cook, State of Illinois.

4. Defendant employed 15 or more employees for each working day for 20 or more calendar weeks in the current and preceding calendar years.

5. At all times relevant herein, Defendant was acting under color of law pursuant to their authority and grants of power under the United States Constitution and the Constitution and statutes of the State of Illinois.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this case pursuant to 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. §§ 2000e, *et seq.*, and 28 U.S.C. §§1331 and 1343.

7. This action properly lies in this district pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and/or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

8. On January 9, 2007, Plaintiff timely filed a Charge of Discrimination (Charge Number 440-2006-05565) with the Equal Employment Opportunity Commission ("EEOC"). A copy of the Charge of Discrimination is attached hereto as Exhibit A.

9. On or about August 29, 2007, Plaintiff received his Notice of Right to Sue from the EEOC for Charge 440-2006-05565. A copy of the Notice of Right to Sue is attached hereto as Exhibit B.

## COMMON ALLEGATIONS

10. On or about November 29, 2004, Defendant hired Plaintiff as a probational officer.

11. On October 10, 2004 Plaintiff sold his 40 caliber handgun, Model #, MSW40VE, serial # PBL2359, to Mr. Ashraf B. Yousef ("Yousef"), a friend of his.

12. This sale happened a month before Plaintiff started with the Chicago Police and before he moved within the city limits.

13. On or about May 18, 2006 Yousef approached Plaintiff about storing a few of his personal items during the process of Yousef's move to North Carolina.

14. Yousef took the chamber and bullets out of the gun. Plaintiff and Yousef locked the gun in a safe in Plaintiff's house.

15. Sgt. Jordan from Internal Affairs Department ("IAD") asked Plaintiff if he had any guns. Plaintiff told him the truth about Yousef's gun and voluntarily took the IAD to Plaintiff's house to get Yousef's gun.

16. Plaintiff gave the IAD the gun. The IAD inventoried the gun with no bullets and no chamber. Plaintiff also showed the IAD a notarized letter containing the proof of sale to Yousef.

17. During Plaintiff's probation period he worked all of his shifts and never had any conflicts with his supervisors. Plaintiff had never been disciplined, reprimanded, or warned during his time as a probationary officer. He received excellent performance reviews from his supervisor, Sgt. Riley.

18. On March 29, 2005 Plaintiff attended a Terrorism Awareness Response Academy ("TARA") training session organized by Defendant. The movie that was shown

3

mainly consisted of planes going into the twin towers and sensational reactions of family members. The movie did not teach officers what to do if an attack occurred.

19. While watching the movie, classmates would look at Plaintiff and shake their heads, ask him where he was from, and ask Plaintiff, "Why do you fly planes into buildings and hate America so much." A picture of Muhammad Ata was shown during the video, and after this clip a fellow classmate yelled, "Hey, there is Ala Mohammad!" The rest of the class laughed at the comment. After the video was over, no instructor conducted a discussion.

20. In May 2006, Plaintiff's supervisors and colleagues returned from another TARA training. Upon information and belief, the officers who came from the TARA session had returned from watching the same film as the one Plaintiff watched at the March 29, 2005 session.

21. When the officers returned from the TARA training, they began asking Plaintiff questions about where he was from and why "you" blow yourselves up.

22. Another incident happened a couple weeks later when Plaintiff was coming back from roll call to pick up his keys. He saw Sgt. Kamenjarin sitting at his desk and watching TV. Sgt. Kamenjarin yelled Plaintiff's name in front of at least ten other officers. He said, "Hey Mohammad I saw you on TV yesterday." Plaintiff said, "Oh yeah?" He said "Yeah, I just came back from TARA, I swear to GOD I saw you or had to be your twin on TV in class. You looked the same, but instead of your duty belt you had bombs strapped around your waist and you were yelling

4

ALLAH UAKBAR and the boom!" His comment was joined by laughter from other officers in the room.

23. Sgt. Kamenjarin went on to say to Plaintiff, "Hey MOHAMMAD let me know when you people are planning another bombing so I can get the FUCK away from there!" That drew laughter from other officers. Plaintiff told him in a firm voice that his comments were not funny. Plaintiff grabbed his radio and keys, rushed to his car, and cried.

24. Sgt. Kamenjarin also told Plaintiff, "I have seen your cousins trying to blow themselves up." This comment was joined by laughter form the other officers. Later, he told Plaintiff, "You would make a good terrorist."

25. Upon information and belief, these comments by Sgt. Kamenjarin opened the door for all the other officers to make derogatory remarks towards Plaintiff.

26. On another occasion, a different Officer, Sgt. McNamara, remarked that Plaintiff "looked like [he] should be running a Seven Eleven."

27. Other comments by officers included calling Plaintiff a "camel jockey." Officers also asked him, "Where is your suicide belt?"

28. One day Plaintiff was scheduled to work with another officer, also named Muhammad. Someone wrote "terrorist car" next to their names and car number on the sheets that are posted.

29. At this time Plaintiff was getting afraid to come to work because of his coworkers. It made his work environment very hostile and uncomfortable. If Plaintiff needed help on a case or report and knew that Sgt. Kamenjarin was working at the front desk, he would not go inside and get help.

30. Plaintiff quietly accepted the taunts and remarks because of his status as an at-will employee. But, after a while the taunts and remarks became too much to handle. Plaintiff went to his old Field Training Officers and a few other officers (Fagan, Barnes, Hallem) and told them his problem. They all told Plaintiff that Sgt. Kamenjarin is just "busting [his] balls". They also said there was nothing Plaintiff could do because he was still on probation. They even told Plaintiff not to make waves while he was on probation, because they will find a way to fire him.

31. But, the conditions at work got worse and Plaintiff felt he needed to get the process started on his transfer after the probationary period. One day, he went to work early and talked to District Commander, Captain Parr ("Parr"). Parr was the acting district commander for a week while the regular district commander was on vacation.

32. Plaintiff told Parr that he wanted to be transferred out for "personal reasons". Plaintiff was scared to tell the actual reason he was leaving. Parr told Plaintiff it would not be a problem.

33. After this, all the probationary police officers who wanted to stay in the 12th district had to complete a "to from" form asking to stay. Plaintiff was the only probationary officer who did not complete a "to from" form.

34. On May 25, 2006 Plaintiff entered the waiting room of Assistant Deputy Superintendent ("ADS") Mathew Tobias ("Tobias"). While in the waiting room, Plaintiff overheard one of the officers in ADS Tobias's office state, "I'm going to

6

get rid of that terrorist. He's probably in Al-Qaeda anyways." The comment was joined by laughter from the others in ADS Tobias's office.

35. The secretary informed ADS Tobias that Plaintiff was in the waiting room. Plaintiff was then directed to wait in the cafeteria. He waited in the cafeteria for over an hour before being called into ADS Tobias's office.

36. ADS Tobias terminated Plaintiff ostensibly for failing to register a gun he knew that Plaintiff did not own. This gun was the gun from Yousef that Plaintiff had registered with IAD.

37. Plaintiff attempted to show the notarized letter with the sale of purchase to ADS Tobias to prove that he did not own the gun. Plaintiff added that there was no way he could have registered a gun that he did not own. ADS Tobias told Plaintiff it was too late and there was nothing he could do about it.

38. According to 8-20-040(a) of the Municipal Code Plaintiff was not in possession or control of the weapon. Plaintiff acted responsibly by freely informing his employer that he was holding a weapon for his friend which he did not own or legally possess.

39. Even if Plaintiff had attempted to register the weapon he did not own, it would have been impossible under 8-20-060(a), which only allows the owner of the unregistered weapon to obtain a valid Illinois Firearm Owner's Identification Card, which is a prerequisite for registration.

40. Plaintiff was discharged with only four days remaining on his probationary period.

## COUNT I

7

### (Title VII – Race, Color, Religion, and National Origin Discrimination and Harassment, and Retaliation

41. Paragraphs 1-40 are restated herein.

42. Defendant intentionally discriminated against Plaintiff on the basis of race, color, religion, and national origin, in violation of 42 U.S.C. § 2000e, *et seq.*, as amended.

43. Defendant failed to prevent or correct harassment and discrimination against Plaintiff on the basis of race, color, religion, and national origin, in violation of 42 U.S.C. § 2000e, *et seq.*, as amended.

44. Defendant's policies, actions, and omissions caused Plaintiff to suffer a hostile work environment, in violation of 42 U.S.C. § 2000e, *et seq.*, as amended.

45. Defendant retaliated against Plaintiff for complaining of discrimination or harassment, in violation of 42 U.S.C. § 2000e, *et seq.*, as amended.

46. Defendant's unlawful actions have caused Plaintiff emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

   a. All wages and benefits he would have received but for the discrimination and retaliation;

   b. A position with Defendant with seniority or, in the alternative, front pay;

   c. Compensatory damages;

   d. Punitive damages;

   e. Attorney's fees and costs; and

   f. Such other relief as law and justice allow.

## COUNT II
### (Section 1981 – Race and Ancestry Discrimination and Retaliation)

47. Paragraphs 1-40 are restated herein.

48. Defendant intentionally discriminated against Plaintiff on the basis of race and ancestry in violation of 42 U.S.C. § 1981, as amended.

49. Defendant, in violation of 42 U.S.C. § 1981, as amended, retaliated against Plaintiff for complaining of discrimination on the basis of race and ancestry.

50. Defendant's unlawful actions have caused Plaintiff emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

   a. All wages and benefits he would have received but for the discrimination and retaliation;
   b. A position with Defendant with seniority or, in the alternative, front pay;
   c. Compensatory damages;
   d. Punitive damages;
   e. Attorney's fees and costs; and
   f. Such other relief as law and justice allow.

## JURY TRIAL

51. Plaintiff demands that the case be tried by a jury.

_____
Rima N. Kapitan, Esq.
Attorney # 6286541
Council on American-Islamic
Relations, Chicago Chapter
(CAIR-Chicago)
28 East Jackson Blvd., Suite 1410
Chicago, Illinois 60604
Ph:    312.212.1520
Fax:   312.212.1530



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5057 4253

950 Pennsylvania Avenue, N.W.
Karen Ferguson, EMP, PHB, Room 4239
Washington, DC 20530

August 24, 2007

Mr. Ala F. Mohammad
c/o Rima Kapitan, Esquire
Council on American-Islamic Relations,
Chicago Chapter
Attorney at Law
28 E. Jackson Blvd., Ste. 1410
Chicago, IL 60604

Re: EEOC Charge Against Chicago Police Dept.
    No. 440200605565

Dear Mr. Mohammad:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Wan J. Kim
Assistant Attorney General
Civil Rights Division

by  *Karen J. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC
    Chicago Police Dept.

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>Amended<br>440-2006-05565 |
|---|---|---|

Illinois Department Of Human Rights and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.)<br>Mr. Ala F. Mohammad | Home Phone (Incl. Area Code)<br>(815) 932-0241 | Date of Birth<br>06-29-1981 |
|---|---|---|

Street Address: 1361 Argyle Lane S, Bourbonnais, IL 60914

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>CHICAGO POLICE DEPARTMENT | No. Employees, Members<br>500 or More | Phone No. (Include Area Code) |
|---|---|---|

Street Address: 100 S Racine, Chicago, IL 60607

DISCRIMINATION BASED ON (Check appropriate box(es).)
☐ RACE ☐ COLOR ☐ SEX ☒ RELIGION ☒ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 04-01-2006    Latest: 12-21-2006
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about November 29, 2004. My most recent position was Police Officer. Throughout my employment I have been subjected to harassment in the form of demeaning and derogatory comments based on my national origin and religion by co-workers and supervisors. I have repeatedly objected to the comments to no avail. In addition, I was required to view and Respondent routinely uses a video in its Terrorism Training class that stereotypes Muslims and Arabs, and which created a hostile work environment for me. On or about May 25, 2006, I was unjustly discharged.

I believe I have been discriminated against because of my national origin, Palestinian, and religion, Muslim, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Date / Charging Party Signature