IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALA MOHAMMAD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 6587 |
| | ) | |
| v. | ) | Judge Manning |
| | ) | |
| CITY OF CHICAGO, | ) | Magistrate Judge Cole |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF CHICAGO'S
MOTION TO DISMISS IN PART PLAINTIFF'S AMENDED COMPLAINT**

Defendant City of Chicago (the "City"), by its attorney, Mara S. Georges, Corporation

Counsel of the City, submits this memorandum of law in support of its motion to dismiss in part

plaintiff's amended complaint with prejudice pursuant to Federal Rule of Civil Procedure

12(b)(6) ("Rule 12(b)(6)").

## I.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he is a Muslim male of Middle Eastern and Arab ancestry.

(Amended Complaint ("Am. Compl."), attached as City Exhibit A, ¶ 2.) Plaintiff alleges that he

began working as a probationary police officer ("PPO") for the Chicago Police Department

("CPD") on November 29, 2004. (Am. Compl. ¶ 10.) Plaintiff claims that on March 29, 2005,

he attended a CPD Terrorism Awareness Response Academy ("TARA") training session. (Am.

Compl. ¶ 18.) Plaintiff alleges that as part of the training he was required to watch a video

which, according to plaintiff, depicts Arabs and Muslims in a derogatory light. (Am. Compl. ¶

18; *see* EEOC Charge, attached as City Exhibit B.) Plaintiff alleges that the video consisted of,

among other things, certain footage of the events of September 11, 2001 ("9/11"), including

planes flying into the Twin Towers, the reactions of 9/11 victims' family members, and a picture

of "Muhammad Ata [sic]." (Am. Compl. ¶¶ 18-19.) According to plaintiff, while watching the video his classmates asked him where he was from and made offensive comments about his religion and national origin. (Am. Compl. ¶ 19.)

The following year, in May 2006, apparently after watching the same training video, a sergeant and some of plaintiff's fellow officers allegedly made similar remarks to plaintiff. (Am. Compl. ¶¶ 21-24.) Plaintiff claims that the sergeant's comments opened the door for other CPD members to make derogatory remarks to him, and some officers and one other sergeant continued to make comments to him about his religion and national origin. (Am. Compl. ¶¶ 25-28.) Plaintiff allegedly complained about the remarks to a few police officers and field training officers. (Am. Compl. ¶ 30.)

Finally, plaintiff alleges that on May 25, 2006, while waiting to meet with Assistant Deputy Superintendent Matthew Tobias ("ADS Tobias"), he overheard someone in ADS Tobias' office say, among other things, "I am going to get rid of that terrorist." (Am. Compl. ¶ 34.) Plaintiff claims that later that day ADS Tobias terminated him from his employment as a PPO for allegedly possessing an unregistered gun. (Am. Compl. ¶ 36.)

**II.      PLAINTIFF'S EEOC CHARGE**

On January 1, 2007, plaintiff filed an amended charge of discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC"). (Am. Compl. ¶ 8.) A copy of plaintiff's amended EEOC Charge is attached to plaintiff's original complaint ("Complaint" ("Compl.")) filed on November 21, 2007. (*See* Compl., ¶ 8 and its attachments; EEOC Charge, City Exhibit B.) In his amended EEOC Charge, plaintiff alleges that he was subjected to a hostile work environment and unjustly discharged on the basis of his religion (Muslim) and national origin (Palestinian). (*See* EEOC Charge, City Exhibit B.) Plaintiff's

EEOC Charge identifies the earliest date of his alleged discrimination as April 1, 2006 and the latest date as December 21, 2006. (*See* EEOC Charge, City Exhibit B.) The EEOC investigated plaintiff's allegations and subsequently issued plaintiff a right to sue letter, which plaintiff allegedly received on August 29, 2007. (Am. Compl. ¶ 9.)

### III.    PLAINTIFF'S AMENDED COMPLAINT

Plaintiff filed his amended complaint on March 21, 2008.[1] Plaintiff's amended complaint contains two counts. In Count I, plaintiff asserts claims for race, color, religious and national origin discrimination and harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"). (Am. Compl. Count I, ¶¶ 1-46.) Count II alleges race and ancestry discrimination and retaliation under 42 U.S.C. § 1981 ("Section 1981"). Among other relief, plaintiff seeks punitive damages. (Am. Compl. Count II, ¶¶ 1-40, 47-50.) The Court should dismiss in part plaintiff's amended complaint with prejudice pursuant to Rule 12(b)(6).

### IV.    MOTION TO DISMISS STANDARDS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded factual allegations must be taken as true. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1996). The Court may consider any documents that are incorporated or referenced in the complaint. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). A motion to dismiss

---

[1] Plaintiff filed his original complaint on November 21, 2007, naming the CPD as the defendant. At a status hearing on February 26, 2008, plaintiff made an oral motion to substitute the City as the proper defendant, which the Court granted. The Court also gave plaintiff leave to file an amended complaint. Plaintiff filed an amended complaint on March 6, 2008, and again on March 21, 2008. The amended complaints are identical.

should be granted if the complaint fails to sufficiently set forth the essential elements of the cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992).

## V.     ARGUMENT

Pursuant to Rule 12(b)(6), the City moves to dismiss in part plaintiff's amended complaint with prejudice. Plaintiff's newly asserted Title VII race and color discrimination and harassment claims and Title VII retaliation claim should be dismissed because they are beyond the scope of the underlying EEOC Charge. The Court should dismiss plaintiff's Title VII claims to the extent they are based on the March 2005 video training incident because those allegations are time-barred. The Court should dismiss plaintiff's Section 1981 race and ancestry discrimination and retaliation claims because plaintiff fails to allege the existence of an employment contract. Even if plaintiff could allege an employment contract, his Section 1981 claims should be dismissed for the additional reason that he fails to allege that his injuries were caused by a City policy, practice or custom. The Court should dismiss plaintiff's Title VII and Section 1981 retaliation claims because plaintiff fails to allege a causal link between his protected activity and his discharge. Finally, the Court should strike plaintiff's request for punitive damages because such damages are not recoverable against the City.

A.     **Plaintiff's newly asserted Title VII race and color discrimination and harassment claims and Title VII retaliation claim should be dismissed because they are beyond the scope of the EEOC Charge.**

In order for plaintiff to sue under Title VII, he must first exhaust his administrative remedies by filing a charge of discrimination concerning his claims with the EEOC. 42 U.S.C. 2000e-5. The filing of an EEOC charge allows the EEOC and the employer an opportunity to settle disputes through conference, conciliation, and persuasion and gives the employer notice of the nature of the employee's complaint. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th

Cir. 1994). Whether a plaintiff's claims in a complaint fall within the scope of the underlying EEOC charge is determined by whether the allegations are like or reasonably related to those contained in the EEOC charge. *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003).

Plaintiff's newly asserted race and color discrimination and harassment claims and retaliation claim are not reasonably related to his EEOC Charge. The nature of plaintiff's EEOC Charge was that he was subjected to a hostile work environment and ultimately discharged on the basis of his religion and national origin. (*See* EEOC Charge, City Exhibit B.) Plaintiff checked the boxes labeled religion and national origin but left blank the other boxes, including those labeled race, color and retaliation. (*See id.*) Further, in the narrative section, plaintiff stated "I believe I have been discriminated against because of my national origin, Palestinian, and religion, Muslim, in violation of Title VII of the Civil Rights Act of 1964, as amended." (*See id.*) Nowhere in the EEOC Charge does plaintiff allege that he was harassed or discriminated against because of his race or color. Further, the EEOC Charge contains no allegations that give rise to the inference that plaintiff was subjected to any retaliatory conduct.

Courts have recognized that retaliation and discrimination claims are unrelated as a matter of law. *O'Rourke v. Continental Cas. Co.*, 983 F.2d 94, 97 (7th Cir. 1993); *Nair v. Bank of America Ill.*, 991 F.Supp. 940, 955 (N.D. Ill. 1997), and an administrative charge of one generally cannot support a civil suit for the other, *see Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996) (citations omitted). Because plaintiff's race and color discrimination claims and retaliation claims are not reasonably related to the EEOC charge, the EEOC Charge is not an adequate predicate for them. *See Vela v. Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) (plaintiff's claim of sexual harassment in complaint was "wholly diverse" from the claim of

disparate treatment described in EEOC Charge); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) (employer's decision to terminate worker not reasonably related to subsequent decision not to rehire worker during a recall); *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, 701-02 (7th Cir. 1999) (claim of failure to accommodate plaintiff's religion not reasonably related to EEOC charge discussing discrimination on bases of age and religion); *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1002-04 (7th Cir. 1994) (gender-based pay discrimination alleged in the EEOC charge cannot support a judicial claim of gender-based promotion denials, even though plaintiff asserts that the promotion denials caused the pay differentials); *Hudgens v. Wexler & Wexler*, 391 F.Supp.2d 634, 649 (N.D. Ill. 2005) (where plaintiff alleges race discrimination in EEOC charge by way of checking box for "race" and attributes his discharge to his race, his retaliation claim is beyond the scope of EEOC charge).

Additionally, plaintiff's Title VII claims should be dismissed to the extent they are based on alleged events occurring outside the time period identified in the EEOC Charge (*i.e.,* April 1, 2006 through December 21, 2006). *See e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (complaint alleging discrimination and detailing the events leading up to termination, *with relevant dates*, provides fair notice to the defendant of what the claims against it are and the grounds upon which they rest) (emphasis added).

Accordingly, because plaintiff never properly presented his race and color discrimination and harassment claims and retaliation claim to the EEOC, those claims should be dismissed with prejudice pursuant to Rule 12(b)(6). (*See* Am. Compl., Count I, ¶¶ 42, 43, 45.)

**B.    Plaintiff's Title VII claims are time-barred to the extent they are based on the March 2005 video incident.**

Plaintiff is barred from basing his Title VII claims on the alleged March 2005 video incident.  Title VII requires an individual to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct.  42 U.S.C. § 2000e-5(e)(1); *Winters v. Iowa State Univ.*, 768 F. Supp. 231, 237 (N.D. Ill. 1991), *aff'd*, 962 F.2d 11 (7th Cir. 1992) (barring Title VII action where EEOC charge was filed outside 300-day limitations period).  Claims not initiated within 300 days of the alleged discrimination are time-barred.  *Winters*, 768 F. Supp. at 237.  The 300–day clock starts when the discriminatory acts occur, not when the consequences of those acts become most painful.  *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 603 (7th Cir. 1992).

Plaintiff alleges that on March 29, 2005, he was required to watch a training video he found offensive while his classmates made remarks to him about his religion and national origin. (Am. Compl. ¶ 18.)  According to plaintiff, both the nature of the video and the character of the alleged remarks were clear to plaintiff in March 2005 as the events were occurring.  (Am. Compl. ¶ 18.)  Moreover, plaintiff's allegations regarding the March 2005 incident are discrete acts; plaintiff does not allege that he was required to watch the video at a later date, nor does he claim that the remarks made to him more than a year later in May 2006 were made by the same individuals who made comments to him during the March 2005 training.  *See National R.R. Passenger Corp. v. Moran*, 536 U.S. 101, 121 (2002) (employee's post-limitation complaints were part of same actionable hostile work environment practice in part because they were perpetrated by the same managers).  Therefore, plaintiff was required to file an EEOC Charge concerning the March 2005 video incident by January 23, 2006 (*i.e.*, within 300 days of the alleged incident).  *See id.*  Yet, plaintiff did not file his EEOC Charge until January 1, 2007, well

beyond the 300-day limitations period. Accordingly, the allegations regarding the March 2005 video incident are time-barred under Title VII and should be dismissed from Count I with prejudice.

**C.     Plaintiff fails to state a claim under Section 1981.**

               1.    <u>Plaintiff fails to allege the existence of an employment contract.</u>

Plaintiff's Section 1981 race and ancestry discrimination and retaliation claims should be dismissed because he fails to allege the existence of an employment contract that grants him a contractual right to continued employment. Section 1981 guarantees "[a]ll persons within the jurisdiction of the United States ... the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws ..." 42 U.S.C. § 1981(a). "In order to bring a [S]ection 1981 claim there must at least be a contract." *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1034 (7th Cir. 1988). Where the plaintiff fails to plead facts justifying the conclusion of the contract, no Section 1981 claim is stated. *Blumenthal v. Murray*, 995 F.Supp. 831, 835 (N.D.Ill.1998) (dismissing Section 1981 claim because plaintiff failed to plead specific facts regarding contract agreement) (citing *Gonzalez*, 133 F.3d at 1034).

In his amended complaint, plaintiff concedes that as a PPO, he was an at-will employee. (Am. Compl. ¶ 30.) Although the Seventh Circuit has held that at-will employment is "sufficiently contractual in nature to maintain a Section 1981 action for discrimination in promotion and pay," it has not held that an at-will employee can maintain a Section 1981 action based solely on termination. *Walker v. Abbott Lab.*, 340 F.3d 471, 477-78 (7th Cir. 2003); *see also Stephens v. Picardi*, No. 06 C 0176, 2006 WL 2644953 at *4 (N.D. Ill. Sep. 12, 2006) (noting that "at-will employees may not be able to raise section 1981 claims with respect to termination or lay-off"). *But see Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 398 (7th Cir.

2007) (stating that at-will nature of employment does not preclude plaintiff from relying on Section 1981's provisions pertaining to contracts). By its very nature, plaintiff's at-will employment could be terminated at any time.   Thus, plaintiff has not and cannot assert a contractual right to continued employment.   As such, his Section 1981 claims should be dismissed with prejudice pursuant to Rule 12(b)(6).

2.   <u>Plaintiff fails to allege that his injury was caused by a City policy, practice or custom.</u>

Even if plaintiff had alleged the existence of an employment contract, his Section 1981 race and ancestry discrimination and retaliation claims should still be dismissed because plaintiff fails to allege that he suffered a constitutional injury as a result of a City policy, practice or custom.   In order to establish municipal liability under Section 1981, a plaintiff must show that "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658 (1978)); *see also McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (applying *Monell* analysis to Section 1981 claims); *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) (stating that plaintiff bringing a Section 1981 claim must "show that the violation of her right to make contracts protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases") (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989)).

Municipalities may be held liable under Section 1981 only for acts which the municipality has officially sanctioned or ordered. *Fiorenzo v. Nolan*, 965 F.2d 348, 350 (7th Cir. 1992).   The Seventh Circuit, following the United States Supreme Court, has found that a municipality must be the "moving force" directly causing the alleged injury before the

municipality may be held liable. *Hulbert v. Wilhelm*, 120 F.3d 648, 656 (7th Cir. 1997), citing *Board of Co. Com'rs of Bryan Co., Okl. v. Brown*, 520 U.S. 397, 404 (1997). To state a Section 1981 claim against a municipality, a plaintiff must allege one of the following: (1) an express municipal policy that, when enforced, deprived the plaintiff of a constitutional right; (2) a widespread municipal practice that, although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) plaintiff's alleged constitutional injury was caused by a person with final policymaking authority. *McCormick*, 230 F.3d at 324-25.

In his amended complaint, plaintiff fails to identify any "express municipal policy" or a "widespread municipal practice" that deprived him of a constitutional right. (*See* Am. Compl., ¶¶ 1-50.) Likewise, plaintiff does not allege that his purported constitutional injuries were caused by persons with "final policymaking authority." (*See id.*) Nothing in the complaint even suggests that the City has engaged in or sanctioned any conduct for which it could be held liable under Section 1981. Consequently, plaintiff's Section 1981 race and ancestry discrimination and retaliation claims should be dismissed with prejudice.

**D.     Plaintiff's retaliation claim fails under either Title VII or Section 1981 because plaintiff fails to allege a causal link between his protected activity and his discharge.**

Title VII and Section 1981 prohibit retaliation against individuals who oppose discrimination. 42 U.S.C. § 2000e-3(a); *Hunter v. Allis Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1420 (7th Cir. 1986). Plaintiff's retaliation claim fails under either statute because plaintiff fails to allege a causal connection between his alleged protected activity and his discharge. *Oates v. Discovery Zone*, 116 F.3d 1161, 1172 (7th Cir. 1997). Although plaintiff alleges that ADS Tobias discharged him on May 25, 2006, plaintiff fails to allege that any decision-maker

regarding his discharge was aware that he had allegedly opposed discrimination and harassment. *Oates*, 116 F.3d at 1172 (plaintiff's retaliation claim fails where the "requisite 'causal link' between [plaintiff's] protected expression and [defendant's] adverse action is ... nowhere to be found"); *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 376 (7th Cir. 2007) ("[a]n employee can honestly believe [he] is the object of discrimination, but if [he] never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints"), citing *Sitar*, 344 F.3d at 727. Accordingly, plaintiff's Title VII and Section 1981 retaliation claims should be dismissed pursuant to Rule 12(b)(6).

**E.     Plaintiff cannot obtain punitive damages against the City.**

Punitive damages cannot be obtained against the City under civil rights statutes such as Section 1981 and Title VII. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1270 (7th Cir. 1984) (Section 1981). As codified at 42 U.S.C. § 1981a(b)(1), Title VII provides that a complainant may recover punitive damages "against a respondent (other than a government, government agency or political subdivision) ...." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981)  It is long settled that municipal corporations such as the City qualify as "political subdivisions" of local government and are, therefore, immune to punitive damages under Title VII. *See Baker v. Runyon*, 114 F.3d 668, 671-72 (7th Cir. 1987) ("Clearly, it was our intent that the limitation on punitive damages would apply to Federal, State, and local governments.") (quoting 137 Cong. Rec. S29023 (daily ed. Oct. 30, 1991) (statement of Sen. Kennedy)); *Spanish Action Committee of Chicago v. City of Chicago*, 811 F.2d 1129, 1134 (7th Cir. 1987) (noting that City of Chicago as municipality cannot be held liable for punitive damages); *Beard v. City of Chicago*, 299 F.Supp. 2d 872, 875 (N.D. Ill. Feb. 2, 2004) (striking prayer for punitive damages against City of Chicago); *Suarez v. Cook County Clerk's Office*, No. 01 C 5830, 2002 WL

31833686, at *3 (N.D. Ill. Dec. 17, 2002) (granting motion to dismiss punitive damages against agency of municipal corporation).

Although immunity from punitive damages may be waived, Illinois has not waived such immunity for its local governments.  745 ILCS 10/2-102 (" a local public entity is not liable to pay punitive or exemplary damages in any action brought against it...."); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981) (noting that Illinois has not waived immunity for City of Chicago); *McCraven v. City of Chicago*, 18 F.Supp. 2d 877, 882 (N.D. Ill. Aug 19, 1998) (same).  Accordingly, plaintiff's request for punitive damages should be stricken from plaintiff's amended complaint.

## VI.    CONCLUSION

For each of the foregoing reasons, the City requests that the Court grant its motion and dismiss with prejudice:  (1) the Title VII race and color discrimination and harassment claims; (2) the Title VII retaliation claim; (3) all Title VII claims to the extent they are based on events occurring beyond the 300-day limitations period; (4) the Section 1981 race and ancestry discrimination claims; (5) the Section 1981 retaliation claim; and (6) plaintiff's claim for punitive damages.

Dated:  April 21, 2008

Respectfully submitted,

MARA S. GEORGES,
Corporation Counsel of the City of Chicago

By:        */s/ Kenneth Charles Robling*
Kenneth Charles Robling
Marcela D. Sánchez
Assistants Corporation Counsel

City of Chicago Department of Law
30 North LaSalle Street, Suite 1020
Chicago, Illinois  60602
(312) 742-0116/744-9332

-12-