IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALA MOHAMMAD, | ) | No. 07 C 6587 |
| | ) | |
| Plaintiff, | ) | Judge Manning |
| v. | ) | |
| | ) | Magistrate Judge Cole |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER TO
PLAINTIFF'S AMENDED COMPLAINT**

Defendant City of Chicago (the "City"), by its attorney Mara S. Georges, Corporation

Counsel of the City, answers plaintiff's amended complaint as follows:

## INTRODUCTION

1.      Plaintiff seeks redress for religion, national origin, and ancestry discrimination
and retaliation. This case is brought for relief pursuant to Title VII of the Civil Rights Act of
1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, and pursuant to 42 U.S.C. § 1981, as amended.

**ANSWER:**     The City admits that plaintiff's amended complaint seeks redress for alleged

religious, national origin and ancestry discrimination and retaliation. The City further admits that

plaintiff purports to bring this action under Title VII of the Civil Rights Act of 1962, 42 U.S.C.

§§ 2000e *et seq.*, as amended ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), as amended.

The City denies that its actions violated any federal, state or local laws or were otherwise

unlawful.

## PARTIES

2.      Plaintiff is a Muslim male of Middle-Eastern origin and Arab ancestry. He
presently resides in the City of Bourbonnais, County of Kankakee, State of Illinois.

**ANSWER:**     The City admits that plaintiff is male.  The City further admits that in personnel records completed by plaintiff he identified his race and ethnicity as "white" and indicated that he was born in "Ramallah, Isreail[sic]" and "Jearsleam [sic], Israeli [sic]."  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 2.

3.     Defendant is a municipal entity of the City of Chicago, doing business in, and maintaining its principal office at 3510 South Michigan Avenue, in the City of Chicago, County of Cook, State of Illinois.

**ANSWER:**     The City admits that it is a municipal corporation located in the City of Chicago and that it conducts business in the City of Chicago, County of Cook, Illinois.  The City denies the remaining allegations in paragraph 3.  The City affirmatively states that the headquarters of the Chicago Police Department, one of the City's operating departments, is located at 3510 South Michigan Avenue, City of Chicago, County of Cook, Illinois.

4.     Defendant employed 15 or more employees for each working day for 20 or more calendar weeks in the current and preceding calendar years.

**ANSWER:**     The City admits the allegations in paragraph 4.

5.     At all times relevant herein, Defendant was acting under color of law pursuant to their [sic] authority and grants of power under the United States Constitution and the Constitution and statutes of the State of Illinois.

**ANSWER:**     The City denies the allegations in paragraph 5.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction of this case pursuant to 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. §§ 2000e, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

**ANSWER:**     The City admits that the Court has jurisdiction over plaintiff's claims.  The City denies that its actions violated any federal, state or local laws or were otherwise unlawful.

7.     This action properly lies in this district pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and/or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**ANSWER:**     The City admits that it is a municipal corporation located in this judicial district and that venue is proper in that the alleged events giving rise to the claims asserted in plaintiff's amended complaint occurred within this district. The City denies that it "resides" in this district. The City further denies that any of its acts or omissions violated any federal, state or local laws or were otherwise unlawful.

8.     On January 9, 2007, Plaintiff timely filed a Charge of Discrimination (Charge Number 440-2006-05565) with the Equal Employment Opportunity Commission ("EEOC"). A copy of the Charge of Discrimination is attached hereto as Exhibit A.

**ANSWER:**     The City admits that on January 9, 2007, plaintiff appears to have amended a charge of discrimination he previously filed with the EEOC on June 13, 2006 (EEOC Charge No. 440-2006-05565, the "EEOC Charge"). The City further admits that January 9, 2007, is within 300 days of April 1, 2006, the date on which plaintiff indicated in his amended EEOC Charge that the alleged discrimination began. The City denies that any exhibits are attached to the amended complaint served on the City or the amended complaint filed with the Clerk of the Court for the Northern District of Illinois. The City admits that attached to plaintiff's original complaint filed on November 21, 2007, is a document that purports to be a true and correct copy of plaintiff's amended EEOC Charge. The City denies that the copy of plaintiff's amended EEOC Charge attached to plaintiff's original complaint is marked as Exhibit A.

9.     On or about August 29, 2007, Plaintiff received his Notice of Right to Sue from the EEOC for Charge 440-2006-05565. A copy of the Notice of Right to Sue is attached hereto as Exhibit B.

**ANSWER:**    The City admits that the EEOC issued plaintiff a right to sue letter for EEOC

Charge No. 440-2006-05565, and that the date on the right to sue letter is August 24, 2007.  The

City is without knowledge or information sufficient to form a belief as to the truth of when

plaintiff received the right to sue letter.  The City denies that any exhibits are attached to the

amended complaint served on the City or to the amended complaint filed with the Clerk of the

Court for the Northern District of Illinois.  The City admits that attached to plaintiff's original

complaint is a document that purports to be a true and correct copy of plaintiff's right to sue

letter.  The City denies that the copy of the right to sue letter attached to plaintiff's original

complaint is marked as Exhibit B.

## COMMON ALLEGATIONS

10.    On or about November 29, 2004, Defendant hired Plaintiff as a probational
officer.

**ANSWER:**    The City admits that it hired plaintiff as a probationary police officer ("PPO")

with the Chicago Police Department on or about November 29, 2004.

11.    On October 10, 2004 Plaintiff sold his 40 caliber handgun, Model #, MSW40VE,
serial # PBL2359, to Mr. Ashraf B. Yousef ("Yousef"), a friend of his.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 11.

12.    This sale happened a month before Plaintiff started with the Chicago Police and
before he moved within the city limits.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 12.

13.    On or about May 18, 2006 Yousef approached Plaintiff about storing a few of his
personal items during the process of Yousef's move to North Carolina.

-4-

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 13.

     14.    Yousef took the chamber and bullets out of the gun. Plaintiff and Yousef locked
the gun in a safe in Plaintiff's house.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 14.

     15.    Sgt. Jordan from the Internal Affairs Department ("IAD") asked Plaintiff if he had
any guns. Plaintiff told him the truth about Yousef's gun and voluntarily took the IAD to
Plaintiff's house to get Yousef's gun.

**ANSWER:**    The City admits that, according to CPD records, on or about May 19, 2006,

plaintiff informed Sgt. Tyrone Jordan of the CPD's Internal Affairs Division ("IAD") that he was

in possession of an unregistered firearm. The City further admits that, according to CPD records,

later that same day members of the CPD recovered an unregistered firearm from plaintiff's

residence. The City is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in paragraph 15.

     16.    Plaintiff gave the IAD the gun. The IAD inventoried the gun with no bullets and
no chamber. Plaintiff also showed the IAD a notarized letter containing the proof of sale to
Yousef.

**ANSWER:**    The City admits that, according to CPD records, on or about May 19, 2006,

members of the CPD recovered an unregistered firearm from plaintiff's residence. The City is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 16.

     17.    During Plaintiff's probation period he worked all of his shifts and never had any
conflicts with his supervisors. Plaintiff had never been disciplined, reprimanded, or warned
during his time as a probationary officer. He received excellent performance reviews from his
supervisor, Sgt. Riley.

**ANSWER:**     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence.  The City denies that plaintiff had never been "disciplined" while he was a PPO because he was discharged as a PPO.  The City is without knowledge or information sufficient to form a belief as to the truth of whether plaintiff had been "reprimanded" or "warned" as those terms are vague and ambiguous.  The City denies the allegations in the third sentence.

18.     On March 29, 2005 Plaintiff attended a Terrorism Awareness Response Academy ("TARA") training session organized by Defendant.  The movie that was shown mainly consisted of planes going into the twin towers and sensational reactions of family members.  The movie did not teach officers what to do if an attack occurred.

**ANSWER:**     The City admits that the CPD administers a Terrorism Awareness Response Academy ("TARA") training program.  The City denies that plaintiff attended any TARA training sessions.  The City admits that certain TARA training instructional videos include footage of the events of September 11, 2001 ("9/11") including, among other things, planes flying into the Twin Towers and the reactions of 9/11 survivors and victims' family members. The City denies the remaining allegations in paragraph 18.

19.     While watching the movie, classmates would look at Plaintiff and shake their heads, ask him where he was from, and ask Plaintiff, "Why do you fly planes into buildings and hate America so much."  A picture of Muhammad Ata [sic] was shown during the video, and after this clip a fellow classmate yelled, "Hey, there is Ala Mohammad!"  The rest of the class laughed at the comment.  After the video was over, no instructor conducted a discussion.

**ANSWER:**     The City denies that plaintiff attended any TARA training sessions and therefore denies the allegations of paragraph 19.

20.     In May 2006, Plaintiff's supervisors and colleagues returned from another TARA training.  Upon information and belief, the officers who came from the TARA session had returned from watching the same film as the one Plaintiff watched at the March 29, 2005 session.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegation that plaintiff's "supervisors and colleagues" attended a TARA training

session in May of 2006 because plaintiff does not identify the alleged supervisors and colleagues.

The City denies the remaining allegations in paragraph 20.

21.    When the officers returned from the TARA training, they began asking Plaintiff
questions about where he was from and why "you" blow yourselves up.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 21 because plaintiff does not identify the alleged officers.

22.    Another incident happened a couple weeks later when Plaintiff was coming back
from roll call to pick up his keys. He saw Sgt. Kamenjarin sitting at his desk and watching TV.
Sgt. Kamenjarin yelled Plaintiff's name in front of at least ten other officers. He said, "Hey
Mohammad I saw you on TV yesterday." Plaintiff said, "Oh yeah?" He said "Yeah, I just came
back from TARA, I swear to God I saw you or had to be your twin on TV in class. You looked
the same, but instead of your duty belt you had bombs strapped around your waist and you were
yelling Allah Uakbar and the boom!" His comment was joined by laughter from other officers in
the room.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in the second sentence. The City denies the remaining allegations in

paragraph 22.

23.    Sgt. Kamenjarin went on to say to Plaintiff, "Hey Mohammad let me know when
you people are planning another bombing so I can get the fuck away from there!" That drew
laughter from other officers. Plaintiff told him in a firm voice that his comments were not funny.
Plaintiff grabbed his radio and keys, rushed to his car, and cried.

**ANSWER:**    The City denies the allegations in the first three sentences. The City is without

knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth

sentence.

24.    Sgt. Kamenjarin also told Plaintiff, "I have seen your cousins trying to blow themselves up." This comment was joined by laughter form the other officers. Later, he told Plaintiff, "You would make a good terrorist."

**ANSWER:**    The City denies the allegations in paragraph 24.

25.    Upon information and belief, these comments by Sgt. Kamenjarin opened the door for all the other officers to make derogatory remarks towards Plaintiff.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegation that "other officers" made "derogatory remarks" toward plaintiff because plaintiff does not identify the alleged officers or specify the alleged remarks. The City denies the remaining allegations in paragraph 25.

26.    On another occasion, a different Officer, Sgt. McNamara, remarked that Plaintiff "looked like [he] should be running a Seven Eleven."

**ANSWER:**    The City denies the allegations in paragraph 26.

27.    Other comments by officers included calling Plaintiff a "camel jockey." Officers also asked him, "Where is your suicide belt?"

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 because plaintiff does not provide a time frame and because plaintiff does not identify the alleged officers.

28.    One day Plaintiff was scheduled to work with another officer, also named Muhammad. Someone wrote "terrorist car" next to their names and car number on the sheets that are posted.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 because plaintiff does not provide a time frame, because plaintiff does not provide a full name for the officer with whom he was allegedly scheduled to work, and because the phrase "sheets that are posted" is vague and ambiguous.

29.     At this time Plaintiff was getting afraid to come to work because of his coworkers. It made his work environment very hostile and uncomfortable. If Plaintiff needed help on a case or report and knew that Sgt. Kamenjarin was working at the front desk, he would not go inside and get help.

**ANSWER:**     The City denies that it subjected plaintiff to any conduct that would constitute a

"hostile work environment" and denies that it violated Title VII or any other law, statute or

ordinance. The City is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in paragraph 29.

30.     Plaintiff quietly accepted the taunts and remarks because of his status as an at-will employee. But, after a while the taunts and remarks became too much to handle. Plaintiff went to his old Field Training Officers and a few other officers (Fagan, Barnes, Hallem) and told them his problem. They all told Plaintiff that Sgt. Kamenjarin is just "busting [his] balls." They also said there was nothing Plaintiff could do because he was still on probation. They even told Plaintiff not to make waves while he was on probation, because they will find a way to fire him.

**ANSWER:**     The City admits that plaintiff was a PPO at the time of his discharge and that

PPOs are at-will employees. The City is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in the first two sentences. The City is without

knowledge or information sufficient to form a belief as to the truth of allegations in the third,

fourth, fifth and sixth sentences because plaintiff does not provide a time frame, because plaintiff

does not identify the field training officers or provide the full names of the other officers whom

he allegedly told about his "problem," and because the term "problem" is vague and ambiguous.

31.     But, the conditions at work got worse and Plaintiff felt he needed to get the process started on his transfer after the probationary period. One day, he went to work early and talked to District Commander, Captain Parr[1] ("Parr") [sic]. Parr [sic] was the acting district commander for a week while the regular district commander was on vacation.

_____

[1] The correct spelling is Parra.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in the first sentence of paragraph 31.  The City admits that sometime in

2006 plaintiff spoke with Captain John Parra ("Parra") while Parra was serving as the acting

District Commander of the 12th District while the District Commander of the 12th District was out

on vacation.  The City is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in the second and third sentences of paragraph 31.

32.    Plaintiff told Parr [sic] that he wanted to be transferred out for "personal reasons".
Plaintiff was scared to tell the actual reason he was leaving.  Parr [sic] told Plaintiff it would not
be a problem.

**ANSWER:**    The City denies the allegations in the first and third sentences of paragraph 32.

The City is without knowledge or information sufficient to form a belief as to the truth of

allegations in the second sentence of paragraph 32.

33.    After this, all the probationary police officers who wanted to stay in the 12th
district had to complete a "to from" form asking to stay.  Plaintiff was the only probationary
officer who did not complete a "to from" form.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 33.

34.    On May 25, 2006 Plaintiff entered the waiting room of Assistant Deputy
Superintendent ("ADS") Mathew[2] [sic] Tobias ("Tobias").  While in the waiting room, Plaintiff
overheard one of the officers in ADS Tobias's office state, "I'm going to get rid of that terrorist.
He's probably in Al-Qaeda anyways."  The comment was joined by laughter from the others in
ADS Tobias's office.

**ANSWER:**    The City admits that on May 25, 2006, plaintiff entered the waiting room of

Assistant Deputy Superintendent Tobias ("ADS Tobias").  The City denies the remaining

allegations in paragraph 34.

---

[2] The correct spelling is Matthew.

-10-

35.     The secretary informed ADS Tobias that Plaintiff was in the waiting room. Plaintiff was then directed to wait in the cafeteria. He waited in the cafeteria for over an hour before being called into ADS Tobias's office.

**ANSWER:**     The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 35.

36.     ADS Tobias terminated Plaintiff ostensibly for failing to register a gun he knew that Plaintiff did not own. This gun was the gun from Yousef that Plaintiff had registered with IAD.

**ANSWER:**     The City admits that ADS Tobias recommended that plaintiff be terminated from

his employment based on the findings of the CPD's Office of Professional Standard ("OPS") that

plaintiff had been in possession of an unregistered firearm in violation of the Municipal Code of

the City of Chicago. The City further admits that on May 25, 2006, ADS Tobias informed

plaintiff that his employment with the CPD had been terminated. The City denies the remaining

allegations in the first sentence of paragraph 36. The City denies that plaintiff "registered" a gun

with IAD. The City admits that, according to CPD records, the unregistered firearm recovered

from plaintiff's residence on May 19, 2006, was inventoried by the CPD as part of an OPS

investigation into plaintiff's alleged misconduct. The City is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in the second sentence of

paragraph 36.

37.     Plaintiff attempted to show the notarized letter with the sale of purchase to ADS Tobias to prove that he did not own the gun. Plaintiff added that there was no way he could have registered a gun that he did not own. ADS Tobias told Plaintiff it was too late and there was nothing he could do about it.

**ANSWER:**     The City is without knowledge or information sufficient to form a belief as to the

truth of the allegations in the first and second sentences of paragraph 27. The City admits that on

May 25, 2006, after ADS Tobias informed plaintiff of his discharge, plaintiff asked Tobias to

reconsider his discharge and Tobias explained to plaintiff that the decision to discharge plaintiff

had already been made and that he lacked authority to change that decision.  The City denies the

remaining allegations in the third sentence.

38.     According to 8-20-040(a) of the Municipal Code Plaintiff was not in possession
or control of the weapon.  Plaintiff acted responsibly by freely informing his employer that he
was holding a weapon for his friend which he did not own or legally possess.

**ANSWER:**     The City denies the allegations in the first sentence of paragraph 38.   The City

affirmatively states that Section 8-20-040(a) of the Municipal Code speaks for itself.  The City is

without knowledge or information sufficient to form a belief as to the truth of the allegation that

plaintiff was "holding a weapon for his friend."  The City denies the remaining allegations in the

second sentence of paragraph 38.

39.     Even if Plaintiff had attempted to register the weapon he did not own, it would
have been impossible under 8-20-060(a), which only allows the owner of the unregistered
weapon to obtain a valid Illinois Firearm Owner's Identification Card, which is a prerequisite for
registration.

**ANSWER:**     The City is without knowledge or information sufficient to form a belief as to the

truth of whether plaintiff was the owner of the unregistered weapon the CPD recovered from his

residence on May 19, 2006.  The City denies that paragraph 39 accurately and/or completely

states the requirements for firearm registration under Section 8-20-060(a) of the Municipal Code;

therefore the City denies the remaining allegations in paragraph 39.

40.     Plaintiff was discharged with only four days remaining on his probationary period.

**ANSWER:**     The City admits the allegations in paragraph 40.

-12-

## COUNT I
### (Title VII - Race, Color, Religion, and National Origin Discrimination and Harassment, and Retaliation)

41.     Paragraphs 1-40 are restated herein.

**ANSWER:**    The City restates and re-alleges its answers to paragraphs 1 through 40 as if stated

here.

42.     Defendant intentionally discriminated against Plaintiff on the basis of race, color, religion, and national origin, in violation of 42 U.S.C. § 2000e, *et seq*., as amended.

**ANSWER:**    The City denies the allegations in paragraph 42.

43.     Defendant failed to prevent or correct harassment and discrimination against Plaintiff on the basis of race, color, religion, and national origin, in violation of 42 U.S.C. § 2000e, *et seq*., as amended.

**ANSWER:**    The City denies the allegations in paragraph 43.

44.     Defendant's policies, actions, and omissions caused Plaintiff to suffer a hostile work environment, in violation of 42 U.S.C. § 2000e, *et seq*., as amended.

**ANSWER:**    The City denies the allegations in paragraph 44.

45.     Defendant retaliated against Plaintiff for complaining of discrimination or harassment, in violation of 42 U.S.C. § 2000e, *et seq*., as amended.

**ANSWER:**    The City denies the allegations in paragraph 45.

46.     Defendant's unlawful actions have caused Plaintiff emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegation that plaintiff suffered emotional distress.  The City denies the remaining

allegations in paragraph 46.

WHEREFORE Plaintiff respectfully requests:

-13-

a.    All wages and benefits he would have received but for the discrimination and retaliation;
b.    A position with Defendant with seniority or, in the alternative, front pay;
c.    Compensatory damages;
d.    Punitive damages;
e.    Attorney's fees and costs; and
f.    Such other relief as law and justice allow.

**ANSWER:**    The City denies that it discriminated or retaliated against plaintiff in violation of

Title VII or any other law, statue or ordinance, and denies that plaintiff is entitled to any of the

requested relief.

## COUNT II
### (Section 1981 - Race and Ancestry Discrimination and Retaliation)

47.    Paragraphs 1-40 are restated herein.

**ANSWER:**    The City restates and re-alleges its answers to paragraphs 1 through 40 as if stated

here.

48.    Defendant intentionally discriminated against Plaintiff on the basis of race and ancestry in violation of 42 U.S.C. § 1981, as amended.

**ANSWER:**    The City denies the allegations in paragraph 48.

49.    Defendant, in violation of 42 U.S.C. § 1981, as amended, retaliated against Plaintiff for complaining of discrimination on the basis of race and ancestry.

**ANSWER:**    The City denies the allegations in paragraph 49.

50.    Defendant's unlawful actions have caused Plaintiff emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

**ANSWER:**    The City is without knowledge or information sufficient to form a belief as to the

truth of the allegation that plaintiff suffered emotional distress.  The City denies the remaining

allegations in paragraph 50.

WHEREFORE Plaintiff respectfully requests:

-14-

a.    All wages and benefits he would have received but for the discrimination and retaliation;

b.    A position with Defendant with seniority or, in the alternative, front pay;

c.    Compensatory damages;

d.    Punitive damages;

e.    Attorney's fees and costs; and

f.    Such other relief as law and justice allow.

**ANSWER:**    The City denies that it discriminated or retaliated against plaintiff in violation of Section 1981 or any other law, statute or ordinance, and denies that plaintiff is entitled to any of the requested relief.

## JURY TRIAL

51.    Plaintiff demands that the case be tried by a jury.

**ANSWER:**    The City admits that plaintiff demands a jury trial.

## THE CITY DEMANDS A JURY TRIAL

## AFFIRMATIVE DEFENSES

1.    All matters in plaintiff's amended complaint that are not within the scope of the underlying EEOC Charge are barred for failure to meet the administrative prerequisites for suit under Title VII.

2.    To the extent that plaintiff relies on events allegedly occurring more than 300 days prior to the filing of his EEOC Charge, plaintiff's claims under Title VII based on those events are time barred.

3.    If plaintiff was subjected to a hostile work environment under applicable law, the City is not liable because it is entitled to establish and will prove the affirmative defense set out in *Burlington Indus., Inc., v. Ellerth*, 542 U.S. 742, 118 S.Ct. 2257 (1998), and its progeny.

-15-

4.     To the extent that plaintiff has failed to mitigate his damages, he is not entitled to

a damage award.

5.     Plaintiff alleges that his alleged harassment began in March 2005.  The City asserts the

affirmative defense of laches because it is prejudiced by plaintiff's unreasonable

delay in bringing his claims.

6.     Punitive damages may not be awarded against the City.

Dated:     April 21, 2008                              Respectfully submitted,

                                                      MARA S. GEORGES
                                                      Corporation Counsel of the
                                                      City of Chicago

                                        By:     */s/ Kenneth Charles Robling*
                                                      Kenneth Charles Robling
                                                      Marcela D. Sánchez
                                                      Assistants Corporation Counsel
                                                      City of Chicago Law Department
                                                      Employment and Policy Litigation Division
                                                      30 North LaSalle Street, Suite 1020
                                                      Chicago, IL 60602
                                                      (312) 742-0116/744-9332

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on April 21, 2008, he caused to be served, by Northern District of Illinois Electronic Case Filing System, a true and correct copy of the attached DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT, to the following person:

> **Patricia Kemling**
> **Counsel on American-Islamic Relations**
> **Chicago Chapter**
> **28 E. Jackson, Suite 1410**
> **Chicago, IL 60604**
> **attorney@cairchicago.org**

<u>/s / Kenneth Charles Robling</u>
KENNETH CHARLES ROBLING
Assistant Corporation Counsel