IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ala Mohammad,<br><br>                    Plaintiff,<br><br>    v.<br><br>City of Chicago.<br><br>                    Defendants. | No.    07 C 6587<br><br>Judge Manning<br><br>Magistrate Judge Cole |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS IN PART
PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff has alleged facts sufficient to state a claim under which relief may be granted. The Complaint states grounds for relief under claims for race, color, religious, national origin discrimination and harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended as well as claims of race and ancestry discrimination and retaliation under 42 U.S.C. § 1981.

**ARGUMENT**

**A. Plaintiff's claims of race and color discrimination and harassment claims and retaliation claims are reasonably related to Plaintiff's EEOC Charge.**

Plaintiff's charge of retaliation is reasonably related to his charges of discrimination as related in his EEOC charge. Defendants argue that as a general rule, a Plaintiff may not bring claims under Title VII that were not included in the original EEOC charge. *Sitar v. Ind. DOT,* 344 F3d 720, 726 (7th Cir. 2003).

1

However, Plaintiffs can assert claims that are (1) "like or reasonably related" to the EEOC charge, such that (2) they can "reasonably expected to grow out of an EEOC investigation of the charges." *Jenkins v. Blue Cross Mut. Hosp Ins. Inc.*, 538 F.2d 164, 167 (7th Circuit. 1976)(*en banc)*. A substantive claim is "like or reasonably related" when the claims are "intertwined in *time, people* and *substance" Kristufek v. Hussmann Foodservice Co.,* 985 F.2d 364, 368 (7th Cir.1983).

Plaintiff can show that his claim of retaliation is reasonably related to his underlying EEOC charges. Though Plaintiff did not check the box labeled retaliation on his EEOC charge he did indicate that he was being discriminated against based on his religion and national origin. (*See* EEOC Charge, Exhibit B.) In addition, in the narrative section of the EEOC charge, Plaintiff stated

> "Throughout my employment I have been subjected to harassment in the form of demeaning and derogatory comments based on my national origin and religion by co-workers and supervisors. I have repeatedly objected to the comments to no avail. On or about May 25, 2006, I was unjustly discharged." *Id.*

This directly gives rise to an inference that Plaintiff was subjected to retaliation. He clearly lays out the charge that he was first discriminated against, he then complained of this unlawful treatment and was then subject to termination. These allegations are sufficient to put Defendants' on notice that Plaintiff is claiming retaliation based on termination after he complained of discrimination to his superiors.

**B. Plaintiff's Title VII Claims should not be dismissed as Time barred**

Defendants next argue that Plaintiff's Title VII claims should be dismissed to the extent they are based on alleged events that occurred outside of the time period identified in the EEOC charge. However, Plaintiff is claiming that he suffered from a hostile work environment due to discrimination and these incidents are illustrative of that environment rather than discrete acts of discrimination.

In *Morgan* the Supreme Court addressed the claim of a black former railroad employer that the defendant-railroad had created a racially hostile work environment. *AMTRAK v. Morgan*, 536 U.S. 101, 117 (2002). In determining whether the district court should have considered discriminatory acts that took place prior to the 300-day filing period as contributing to the hostile work environment, the Supreme Court distinguished between "discrete incidents" of discrimination and acts that together constitute a hostile work environment.

A "discrete incident" of discrimination is an act that in itself "constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114-17. In contrast, a hostile work environment claim is "comprised of a series of separate acts that collectively constitute one '"unlawful employment practice.' 42 U.S.C. § 2000e-5(e)(1)." *Id.* at 117. Therefore, it is irrelevant that "some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* As long as "an act contributing to the claim occurs within the filing period," the court may consider the entire time period for purposes of assessing the hostile work environment claim. *Id. See also Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2174-75 (2007) (explaining and approving *Morgan's*

distinction between "freestanding violations" and a series of events that constitute a hostile work environment); *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008) (holding that an alleged rape that occurred prior to the 300-day limitations period was not time barred, because it was part of the hostile work environment that only became apparent upon the employer's failure to investigate the rape and protect the employee); *Coolidge v. Consol. Indianapolis*, 505 F.3d 731, 733 (7th Cir.2007) (acknowledging that "so long as an act of harassment occurs within the limitations period, other harassment outside the limitations period can also come in," but holding that the incidents alleged did not constitute a hostile work environment). Plaintiff is not claiming that the acts that occurred in 2005 in relation to the video were discreet acts of discrimination. Accordingly, the allegations regarding the March 2005 video incident are illustrative of a hostile work environment and should be considered in assessing the hostile work environment claim.

C. **Plaintiff can establish a claim of discrimination and retaliation under Section 1981**

a. Plaintiff can establish the existence of an employment contract under Section 1981

Plaintiff's claims of discrimination and retaliation under Section 1981 should not be dismissed because Plaintiff is able to show that though he was an at-will employee, an employment contract existed under Section 1981. Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (2003). The language "to make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of

4

all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

In *Walker v. Abbott Labs*, the Seventh Circuit subscribed to the majority rule among sister circuits that the term "contract" as used in § 1981(a) and (b) includes at-will employment relationships; they are "sufficiently contractual in nature" for purposes of § 1981. 340 F.3d 471, 478 (7th Cir. 2003). The Court determined that allowing at-will employment actions under § 1981 was consonant with Illinois state law, which recognizes at-will employment relationships as contractual, and with the purpose of § 1981. To bar at-will employees from stating § 1981 claims would undermine Congress's attempt to "restore the broad scope of Section 1981 [to] ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." *Id.* at 477 (internal quotations omitted).

The *Walker* rule encompasses all at-will employment; the Seventh Circuit does not require any proof as to duration, terms or nature of the at-will employment. *Id.* District courts applying the *Walker* rule have uniformly held that any at-will employment relationship is sufficiently contractual to bring a § 1981. *See, e.g., Easley v. Iberia Airlines*, No. 05 C 3760, 2007 U.S. Dist. LEXIS 12653 (Feb. 23, 2007) (at-will airline employees); *McFerren v. Village of Dolton*, No. 06 C 2362, 2007 U.S. Dist. LEXIS 11674 (Feb. 16, 2007) (at-will Assistant Personnel Director and Risk Manager for the Village); *Cox v. Prime Fin. Mortg. Corp.*, No.: 05 C 4814, 2006 U.S. Dist. LEXIS 11827 (Mar. 20, 2006) (at-will branch manager); *Swearingen-El v. Cook County Sheriff's Dep't*, 416 F. Supp. 2d 612 (N.D. Ill. 2006) (at-will corrections officer).

Therefore, Plaintiff, an at-will police officer, can assert a claim under § 1981, by establishing that he was an at-will employee of the City who experienced discrimination during his employment as well as retaliation for complaining.

  **b.** <u>Plaintiff can establish a City custom, policy or practice caused his injuries</u>

Defendants argue that Plaintiff fails to allege that the discrimination he suffered and the subsequent retaliation was cause by a City policy, practice or custom. However, Plaintiff has alleged several facts which when construed in light most favorable to the Plaintiff, represent a wide spread policy of discrimination.

To establish liability under Section 1981 Plaintiff has the burden to show that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible" *Monell v. N.Y. City Dept. of Social Servs.,* 436 U.S. 658 (1978). However, Plaintiff does not have to demonstrate that the practice is an express policy but rather a common practice that "although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)</u>

 Plaintiff alleged that he, along with several of his fellow officers, was made to watch a sensationalized video depicting the events of September 11, 2001 as part of Terrorism Awareness Response Academy training session organized by the Defendants. (Compl. at 18). However, this video did not actually teach officers what to do if faced with a terrorist act. *Id.* On more than one occasion, following the

6

viewing of the tape officers then subjected the Plaintiff to taunts and insults due to his national origin. (Compl. at 18 - 23) In addition, Plaintiff alleges that when he complained to superior officers of his discriminatory treatment he was told "not to make waves about it while he was on probation, because they will find a way to fire him". (Compl. at 30) Presumably, "they" refereed to individuals with policy making decision capacity.

Finally, Plaintiff alleges that he overheard Assistant Deputy Superintendent Mathew Tobias speaking with other officers and overheard one of the officers state "I'm going to get rid of that terrorist. He's probably in Al-Qaeda anyway." (Compl. at 34) This comment was joined by laughter from the others in ADS Tobias's office. *Id.* Plaintiff was subsequently terminated by ADS Tobias. As the Assistant Deputy Superintendent, ADS Tobias can be presumed to have policy making authority for the police department.

**D. Plaintiff can establish a causal link between his protected activity and his discharge.**

Defendants also argues that Plaintiff failed to plead a causal connection between his being terminated and his termination. Plaintiff alleged that he approached several individuals including Field Training Officers who were Plaintiff's *superiors* about the discrimination after it became too much for him to bear. He was specifically told that there was nothing he could do. These officers even went so far as to tell Plaintiff not to "make waves" or he would lose his job. (Compl. at 30) In addition, not long after Plaintiff started complaining he was called to ADS Tobias' office. (Compl. at 34). Plaintiff has plead that only moments before he was terminated he overheard officers

7

in ADS Tobias' office insulting him and calling him a "terrorist". *Id.*. Construing the facts in a light most favorable to the Plaintiff, these allegation represent examples of the Defendant's failure to adequately address the harassment Plaintiff experienced and also illustrate how Defendant's retaliated against Plaintiff after he complained.

E. **Punitive damages**

Plaintiff agrees that the City is immune from punitive damages and offers to Amend Plaintiff's Complaint to reflect this.

WHEREFORE, Plaintiff respectfully requests that this honorable Court deny Defendant's Motion to Dismiss in Part Plaintiff's Amended Complaint.

Dated: May 29, 2008

Respectfully Submitted,

        _s/Patricia Kemling_
Patricia Kemling, Esq.
Attorney # 6286541
Council on American-Islamic
Relations, Chicago Chapter
(CAIR-Chicago)
28 East Jackson Blvd., Suite 1410
Chicago, Illinois 60604
Ph:    312.212.1520
Fax:   312.212.1530

8

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that she caused a copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS IN PART PLAINTIFF'S AMENDED COMPLAINT to be served upon: Kenneth Robling, City of Chicago, Department of Law, 30 North LaSalle Street, Suite 1020, Chicago, IL, 60602 by placing a copy of same in U.S. Mail at 28 E. Jackson, Suite 1410, Chicago, IL, 60604, properly addressed and postage prepaid, before 5:00 p.m. on May 29, 2008.

    _s/Patricia Kemling___
Patricia Kemling, Esq.
Attorney # 6286541
Council on American-Islamic
Relations, Chicago Chapter
(CAIR-Chicago)
28 East Jackson Blvd., Suite 1410
Chicago, Illinois 60604
Ph:     312.212.1520
Fax:    312.212.1530