IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALA MOHAMMAD, | ) | 07 C 6587 |
| **Plaintiff,** | ) | |
| | ) | **Judge Manning** |
| v. | ) | |
| | ) | **Magistrate Judge Cole** |
| CITY OF CHICAGO, | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT CITY OF CHICAGO'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS IN PART PLAINTIFF'S AMENDED COMPLAINT

Defendant City of Chicago (the "City"), by its attorney Mara S. Georges, Corporation Counsel of the City of Chicago, submits this Reply in further support of its motion to dismiss in part plaintiff's amended complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

The City has moved to dismiss a portion of Count I of plaintiff's amended complaint and all of Count II.[1] As to Count I, as argued in the City's opening brief, plaintiff's claims of race and color discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), as well as his Title VII retaliation claim should be dismissed because they are beyond the scope of plaintiff's underlying EEOC charge and plaintiff therefore failed to exhaust his administrative remedies for those claims prior to filing the instant action. Although plaintiff attempts to argue in his response that these claims are

---

[1] The City also moved to strike plaintiff's claims for punitive damages because such damages are not recoverable against the City, which plaintiff has conceded. (See Pl. Resp. at 8).

"reasonably related" to his EEOC charge, he only addresses the retaliation claim and not the race and color claims. As such, at a minimum, his race and color claims should be dismissed. Moreover, with respect to his Title VII retaliation claim, plaintiff fails to address binding Seventh Circuit precedent that clearly establishes that retaliation and discrimination claims are unrelated as a matter of law. Plaintiff does nothing to distinguish those cases, nor does he offer any case law that would support his argument that the claims are reasonably related.

In response to the City's argument that all of plaintiff's Title VII claims in Count I should be dismissed to the extent that they are based on events that occurred outside the time period identified in the EEOC charge (April 1, 2006 through December 21, 2006), plaintiff argues that his allegations regarding the March 2005 training video are not time-barred because the training video was not a discrete act of discrimination, but one of a series of separate acts that allegedly comprise his hostile work environment. Pl. Resp. at 4. The March 2005 training video incident, however, is too remote and attenuated to be considered part of the series of events plaintiff alleges occurred more than a year later in May 2006. Moreover, even if that were not the case, it is clear from the face of the complaint that plaintiff found the video offensive immediately after he first viewed it allegedly in March 2005. Am. Compl. ¶ 18. As such, plaintiff is unable as a matter of law to reach back to the March 2005 training video incident to support his hostile work environment claim. Tinner v. United Ins. Co. of America, 308 F.3d 697, 708 (7th Cir. 2002).

As to Count II, the City has moved to dismiss plaintiff's claims of race and ancestry discrimination and retaliation under 42 U.S.C. § 1981 ("Section 1981") because, as an at-will probationary police officer, plaintiff fails to allege the existence of an employment contract that grants him a contractual right to continued employment. As argued in the City's opening brief,

the Seventh Circuit has not specifically held that an at-will employee can maintain a Section 1981 action based solely on termination, which plaintiff attempts to do here. Plaintiff does not address this issue in his response. Moreover, even if plaintiff has alleged a sufficient contract under Section 1981, his claim still fails because he has not alleged that a City policy, practice or custom caused a constitutional injury. In response, plaintiff erroneously asks this Court to infer essential elements of a municipal liability claim from certain factual allegations in his complaint. Specifically, plaintiff asks the Court to "presume" that decision-makers with policy making authority may have been involved in his alleged constitutional injury, which is plainly insufficient under Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007), which holds "factual allegations must be enough to raise a right to relief above the speculative level."

Finally, the City also moves to dismiss plaintiff's Title VII and Section 1981 retaliation claims on the independent ground that plaintiff has failed to allege a causal link between his purported protected activity and subsequent discharge. Although plaintiff attempts to argue in his response that he complained about the alleged harassment to Field Training Officers who were his "superiors," he fails to allege any facts that would support an inference that any decision-maker concerning plaintiff's discharge was aware of his alleged protected activity. Accordingly, this Court should grant the City's motion to dismiss in part plaintiff's amended complaint.

## ARGUMENT

**I.    Plaintiff's Title VII race and color discrimination and harassment claims and Title VII retaliation claim should be dismissed because they are not "reasonably related" to his EEOC charge.**

It is well-settled, and plaintiff does not dispute, that a Title VII plaintiff cannot bring

claims in a lawsuit that were not included in his EEOC charge. See Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). It is also undisputed that plaintiff's EEOC charge only contains claims of religion and national origin discrimination; the charge does not include claims of race and color discrimination and harassment, or a retaliation claim. Thus, the only way plaintiff's Title VII race and color discrimination claims and his Title VII retaliation claim survive the City's motion to dismiss is if plaintiff can show that these claims are "like or reasonably related to those contained in the EEOC charge." Sitar v. Indiana Dept. of Trans., 344 F.3d 720, 726 (7th Cir. 2003). They clearly are not.

     First, with respect to plaintiff's race and color discrimination and harassment claims, plaintiff does not contest that these new claims are outside the scope of his EEOC charge. "Race" and/or "color" are not synonymous with "national origin." See Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973) (defining "national origin" as "the country where a person was born, or, more broadly, the country from which his or her ancestors came."). Moreover, plaintiff offers no explanation whatsoever that might demonstrate that his race and color discrimination claims were somehow reasonably expected to grow out of an EEOC investigation into his claims of discrimination and harassment based on his national origin (Palestinian) and religion (Muslim). Nor could he. Plaintiff's EEOC charge not only fails to identify his race or color, but it also contains no allegations that would put the EEOC or the City on notice that plaintiff was also alleging discrimination on account of his race or color. As such, plaintiff's Title VII race and color discrimination and harassment claims must be dismissed as outside the scope of his EEOC charge. See Abdulrahim v. Gene B. Glick, Co., Inc., 612 F. Supp. 256, 261-62 (N.D. Ind. 1985) (dismissing race and color discrimination claims as outside scope of EEOC charge and not

reasonably related to charges of national origin discrimination where Palestinian plaintiff only checked box for "national origin" and not "race or color" discrimination).

Second, as to plaintiff's newly asserted Title VII retaliation claim, nothing in plaintiff's response justifies deviating from the presumptive rule that a retaliation claim is distinct from a hostile workplace claim, and an administrative charge of one generally cannot support a civil suit for the other. See Sitar, 344 F.3d at 726; Noreuil v. Peabody Coal Co., 96 F.3d 254, 258 (7th Cir. 1996). Moreover, "an aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992).

Acknowledging that he did not check the box labeled "retaliation" on his EEOC charge, plaintiff nonetheless claims his retaliation claim is reasonably related to his religion and national origin discrimination and harassment claims because the narrative section in the EEOC charge "gives rise to an inference that [he] was subjected to retaliation." Pl. Resp. at 5. Plaintiff's purported "inference" is based on the mere fact that plaintiff claims in his EEOC charge that he was subjected to derogatory comments, he objected to those comments, and he was discharged. (See EEOC Charge, City Exhibit B.) However, nowhere in his EEOC charge does plaintiff allege he was discharged *because he complained* about the alleged discrimination, nor does he state that his discharge was *a result of* his protected activity. Rather, plaintiff attempts to rely on the mere fact that he asserts in his EEOC charge that he was "unjustly discharged" as the basis of his retaliation claim, which is insufficient as a matter of law. See Auston v. Schubnell, 116 F.3d 251, 254 (7th Cir.1999) (finding that plaintiff's failure to check the retaliation box or reference retaliatory conduct in narrative section of EEOC charge barred his retaliation claim); Heard v.

5

U.S. Steel, No. 06-cv-615, 2006 WL 3775942 at *4 (S.D. Ill., Dec. 21, 2006) (same).

The facts of Heard are particularly instructive. Like plaintiff in this case, the plaintiff in Heard attempted to bring a retaliation claim in her federal lawsuit despite the fact that she failed to check the box labeled "retaliation" in her underlying EEOC charge. 2006 WL 3775942 at *3-4. The defendant moved to dismiss plaintiff's retaliation claim for failure to exhaust her administrative remedies because retaliation was not included in the EEOC charge. Id. Despite the fact that plaintiff alleged in her EEOC charge that she was constantly harassed, that she complained about the harassment and no action was taken, that she was suspended and subsequently discharged, the court found that "it [was] simply not reasonable to infer a retaliation claim from her narrative." Id. Because plaintiff failed to check the retaliation box, failed to use the word "retaliation" in her narrative, failed to allege the harassment got worse after she complained, and failed to allege that she was harassed and terminated because she complained, the court determined she was precluded from bringing a Title VII retaliation claim in the lawsuit. Id.

Like the plaintiff in Heard, even though plaintiff in the instant case states in his EEOC charge that he was discharged, his charge is silent as to any facts that would put the EEOC or City on notice that he was also asserting a retaliation claim. As such, plaintiff failed to exhaust his administrative remedies and this Court should dismiss with prejudice his Title VII retaliation claim.

**II.    The March 2005 Training Video Incident Is Time-Barred**

Plaintiff does not dispute that Title VII requires an individual to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct. 42 U.S.C.

§ 2000e-5(e)(1). Plaintiff likewise does not dispute that the March 2005 training video incident occurred well outside the outer limit of the requisite EEOC filing period in this case. Nonetheless, plaintiff argues that, because he is claiming that he suffered from a hostile work environment, the time-barred incident should be considered along with the incidents that did occur within the EEOC limitations period because all of the incidents together comprise his claim of hostile work environment, which is "one unlawful employment practice." Pl. Resp. at 3. However, because the March 2005 training video incident was too remote and attenuated to the other allegedly discriminatory acts plaintiff claims constitute his hostile work environment, plaintiff's continuing violation theory fails as a matter of law.

Although the United Supreme Court held in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) that time-barred incidents may be considered by a court for the purposes of determining a hostile work environment claim, the time-barred acts must be part of the same unlawful employment practice. Put another way, if the acts are "so discrete in time or circumstances that they do not reinforce each other, [they] cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." Tinner v. United Ins. Co. of Am., 308 F.3d 697, 708 (7th Cir. 2002) (citations omitted). Courts have held that time-barred acts are not part of the same hostile work environment when there is a lengthy gap between the two sets of acts, or when the acts are not committed by the same individuals. See, e.g., Selan v. Kiley, 969 F.2d 560, 567 (7th Cir. 1992) (holding that even though acts in question involved the same type of discrimination (racial), because there was a two-year gap between the acts, they were not frequent enough to support a continuing violation claim); Lucas v. Chicago Transit Auth., 367 F.3d 714, 727 (7th Cir. 2004) (holding time-barred act not part of

same hostile work environment claim where it occurred three-years prior and involved a different supervisor). Because the March 2005 training video incident occurred more than a year before any other of the alleged discriminatory acts, and plaintiff does not allege that it involved the same individuals, it is too remote and attenuated to be considered part of the same "unlawful employment practice."

In addition, even if the March 2005 training video incident is somehow related to the other acts that plaintiff claims comprise his hostile work environment claim, it is still time-barred. Plaintiff alleges that he found the training video itself offensive, and felt discriminated against immediately after watching it and after being subjected to derogatory comments in March 2005. (See Am. Compl. ¶¶18-19). Indeed, plaintiff argues in his response that the requirement to watch the training video in and of itself constituted a discriminatory practice for which the City should be liable. Pl. Resp. at 6. As such, the March 2005 incident clearly constituted a discrete act for which plaintiff may not sue unless he filed a timely EEOC charge, which undisputably he did not. "Discrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*." Morgan, 536 U.S. at 113. Moreover, "a plaintiff who feels discriminated against by a discrete act, but fails to timely file charges on that act, cannot later reach back to those events when the statute of limitations expires in order to form a continuing violation claim." Tinner, 308 F.3d at 708. This Court accordingly should dismiss all of plaintiff's Title VII claims to the extent they are based on the time-barred March 2005 training video incident.

### III.   Plaintiff Cannot State a Claim under Section 1981

As demonstrated in the City's opening brief, the Seventh Circuit has not expressly held

whether an at-will employee like plaintiff can state a claim under Section 1981 based solely on termination.[2] See Walker v. Abott Labs., 340 F.3d 471, 477-78 (7th Cir. 2003) (holding at-will employment relationships sufficiently contractual in nature to support claims of discrimination in promotion and pay under Section 1981, but distinguishing claims of discrimination based on termination or lay-off); see also Stephens v. Picardi, No. 06 C 0176, 2006 WL 2644953 at *4 (N.D. Ill. Sept. 12, 2006) (noting that "at-will employees may not be able to raise section 1981 claims with respect to termination or lay-off"). Plaintiff does not address in his response what appears to be an open issue in this Circuit; rather, he merely reiterates the general rule as applied to cases involving at-will employees asserting discrimination claims based on employment conditions other than termination or lay-off.

Even if plaintiff had alleged a sufficient contract entitling him to continued employment under Section 1981, plaintiff's claim still fails because he has not alleged that a City policy, practice or custom caused his constitutional injury. For a municipality like the City to be liable under Section 1981, plaintiff must allege either: (1) an express municipal policy that, when enforced, deprived plaintiff of a constitutional right; (2) a widespread municipal practice that, although not expressly authorized, is so permanent and well-settled as to constitute custom or usage with the force of law; or (3) that plaintiff's alleged constitutional injury was caused by a person with final policymaking authority. McCormick v. City of Chicago, 230 F.3d 319, 324-25 (7th Cir. 2000).

---

[2] In Humphries v. CBOCS West, Inc., 474 F.3d 387, 398 (7th Cir. 2007), the Seventh Circuit held that Section 1981 applies to claims of retaliation, including claims of retaliatory discharge in particular. Although the court noted in *dicta* that the at-will nature of the Humphries plaintiff's employment did not preclude a Section 1981 claim in that case, it did not consider the issue directly. Id.

In his response, plaintiff attempts to cure the deficiencies in his complaint by asking this Court to infer essential elements of a municipal liability claim from certain vague factual allegations in the complaint. For example, plaintiff argues in his response that he can pursue a municipal liability claim because ADS Tobias and unidentified individuals referred to as, "they," have policy-making authority. Pl. Resp. at 7. However, plaintiff's complaint contains no such allegations. It is well-settled that a plaintiff cannot raise a new claim for the first time in a response brief. See, e.g., Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) (a complaint may not be amended by briefs in opposition to a motion to dismiss).

Plaintiff argues in his response that his municipal liability claim under Section 1981 is based on the same "sensationalized" March 2005 training video that he alleges was discriminatory as well as his termination in May 2006. Pl. Resp. at 10. Such allegations, however, are not sufficient to suggest that any policy making official for the City was "bound to have notice" or was aware of any of the alleged incidents. See Jackson v. Marion County, 66 F.3d 151, 152-53 (7th Cir. 1995) (stating that, in certain instances, an unconstitutional policy may be inferred "by a showing of bad acts and inviting the Court to infer from them that the policymaking level of government noticed what was going on," and either condoned or acquiesced in the misconduct). Nothing in plaintiff's complaint remotely suggests the kind or frequency of bad acts from which the Court could infer the policymaking level of government was on notice. This Court should therefore not infer an unconstitutional policy, practice or custom based on plaintiff's allegations, and should dismiss plaintiff's Section 1981 claim against the City.

Morever, even if plaintiff had alleged that the individuals in the complaint had policy-

making authority (he does not), his Section 1981 claim would still warrant dismissal. Plaintiff attempts to state a municipal liability claim under Section 1981 based on allegations that he complained to "superior officers" who told him not to make waves because "they will find a way to fire him," and that "presumably, 'they' referred to individuals with policy making decision capacity," Pl. Resp. at 7, and that the individual who terminated plaintiff, Assistant Deputy Superintendent Tobias, presumably has policy making authority for the police department. Pl. Resp. at 7. With respect to the former argument, such blatant speculation that policy making individuals "may" have been involved, is plainly insufficient in light of the United States Supreme Court's holding in Twombly that "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965.

With respect to the latter argument, that ADS Tobias "presumably has policy making authority," plaintiff is wrong as a matter of law. It is well-settled that the authority to set municipal policy for the Chicago Police Department ("CPD") is vested only in the City Council and the Police Board. Beal v. City of Chicago, No. 04 C 2039, 2007 WL 1029364, at *14 (N.D. Ill. Mar. 30, 2007) (citing Auriemma v. Rice, 957 F.2d 397, 401 (7th Cir. 1992)). The Seventh Circuit has unequivocally held that the Superintendent of Police is not a final policymaker with respect to the CPD. Auriemma v. Rice, 957 F.2d 397, 401 (7th Cir. 1992). It therefore stands to reason that the lower-rank CPD officials, such as Field Training Officers and ADS Tobias, likewise are not final policymakers and plaintiff cannot state a Section 1981 claim against the City on that basis. See Ekermamn v. City of Chicago, No. 01 C 9686, 2002 WL 1008458 at *2 (N.D. Ill. May 16, 2002) ("Neither the Superintendent of Police, [ ] nor lower-ranking officers . . . are the final policymaking authority for matters involving the Chicago Police Department.")

As a result, this Court should dismiss plaintiff's Section 1981 claim against the City for failure to allege that a municipal custom, policy or practice caused his alleged injury.

IV.     **Plaintiff's Title VII and Section 1981 Retaliation Claims Should Be Dismissed For Failure to Allege a Causal Link Between His Purported Protected Activity and Discharge**

Finally, this Court should dismiss plaintiff's Title VII and Section 1981 retaliation claims on the independent ground that plaintiff has failed to allege a causal link between his purported protected activity and subsequent discharge as required under the law.  He has not alleged facts that would demonstrate he was terminated because he complained about his alleged discrimination and harassment.  To the contrary, all plaintiff offers in his response is that he alleged in his complaint that he was called to ADS Tobias' office shortly after plaintiff started complaining to his co-workers about alleged discrimination.  Pl. Resp. at 7.  Temporal proximity, however, is not enough to provide the necessary causal link between the protected activity and adverse employment action.  See Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000) (stating that "[s]peculation based on suspicious timing alone" does not support a reasonable inference of retaliation).

Moreover, the Seventh Circuit has held that a retaliation plaintiff cannot establish a causal link when the person who made the decision that constituted the adverse employment action did not know about the plaintiff's protected activity. *Maarouf v. Walker Mfg. Co.,* 210 F.3d 750, 755 (7th Cir. 2000).  Plaintiff has not alleged that ADS Tobias (or any other decision-maker regarding his discharge) had knowledge that plaintiff had allegedly complained about discrimination prior to his discharge.  See Bernier v. Morningstar, Inc., 495 F.3d 369, 376 (7th Cir. 2007) ("an employer cannot retaliate when it is unaware of any complaints"); Hayes v.

Potter, 310 F.3d 979, 982-83 (7th Cir. 2002) ("it is not enough that the decisionmaker should have known about a discrimination complaint; the decisionmaker must have had actual knowledge of the complaint for [the] decision to be retaliatory"). Accordingly, plaintiff's Title VII and Section 1981 retaliation claims should be dismissed for failure to state a claim.

WHEREFORE, Defendant City of Chicago respectfully requests that this Court grant its motion to dismiss in part plaintiff's amended complaint.

Dated: June 12, 2008                                              Respectfully submitted,

                                                                  MARA S. GEORGES
                                                                  Corporation Counsel, City of Chicago


                                                       BY:   /s/ Marcela D. Sánchez
                                                             MARCELA D. SÁNCHEZ
                                                             Assistant Corporation Counsel
                                                             KENNETH C. ROBLING
                                                             Senior Counsel

City of Chicago, Department of Law
30 North LaSalle Street
Suite 1020
Chicago, Illinois  60602
(312) 744-9332/(312) 742-0116