IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALA MOHAMMAD, | ) | |
| | ) | No. 07 C 6587 |
| Plaintiff, | ) | |
| | ) | Hon. Blanche M. Manning |
| v. | ) | Judge Presiding |
| | ) | |
| CITY OF CHICAGO, | ) | Magistrate J. Cole |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO COMPEL
DISCOVERY RELATED TO TARA TRAINING**

Plaintiff, ALA MOHAMMAD, by and through his counsel, Kevin Vodak of CAIR-CHICAGO, respectfully moves this Court to compel Defendant to produce certain requested documents and allow discovery related to the training of its police officers, and in support thereof states as follows:

**I.      Background**

1.      The Complaint in this matter alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.  Plaintiff, a Muslim male of Middle Eastern national origin and Arab ancestry, alleges that he was subjected to a hostile work environment based on his religion, national origin, and ancestry during his tenure as a probationary police officer with the City of Chicago. (Am. Compl. ¶¶2, 42-44, 48.)[1]  The hostile work environment claims include derogatory remarks directed at Plaintiff based on his protected statuses when he was at the Training Academy and when he was working in District 12.  (Am. Compl. ¶¶18-31.)

---

[1]  Plaintiff also presents claims of disparate treatment and retaliation based on his dismissal from his employment with Defendant.  These claims are not pertinent to this Motion.

2. When Plaintiff was receiving instruction at the Training Academy, he alleges that on March 29, 2005 he attended a Terrorism Awareness Response Academy ("TARA") training session organized by Defendant that merely consisted of a video depicting the events on September 11, 2001 without any instruction as to anti-terrorism techniques. While Plaintiff was watching this video, classmates made harassing comments about Plaintiff being one of the terrorists who attacked the United States on September 11, 2001. (Am. Compl. ¶¶18-19.)

3. Near the end of his tenure with the Chicago Police Department when he was working in District 12, Plaintiff alleges that he again was subjected to harassing remarks in May 2006 by his supervisors and colleagues, who made discriminatory comments against Plaintiff based on his religion, national origin, and ancestry. (Am. Compl. ¶¶20-31.) For purposes of this Motion, Plaintiff specifically alleges that Sgt. Kamenjarin and other officers attended another TARA training in May 2006, and Sgt. Kamenjarin made harassing comments to Plaintiff such as: "Hey Mohammad I saw you on TV yesterday . . . Yeah, I just came back from TARA, I swear to God I saw you or had to be your twin on TV in class. You looked the same, but instead of your duty belt you had bombs strapped around your waist and you were yelling Allah Uakbar and the boom!" (Am. Compl. ¶¶20-22.) Such comments led to other officers making similar derogatory remarks to Plaintiff. (Am. Compl. ¶¶22-25.)

4. As part of the written discovery sought in this matter, Plaintiff requested Defendant to produce "[a]ll documents and materials related to the Terrorism Awareness and Response Academy, including but not limited to: a. Classroom training materials; b. Instructor training materials; c. Videos and visual aids; d. Program handbooks; and e. Written guidelines." (Def. Resp. to Request No. 19, attached hereto as Ex. A.)

5.　　Defendant objected to Plaintiff's request for the TARA training materials as "overly broad, unduly burdensome, vague, ambiguous, and seek[ing] information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Defendant also asserted that this request "seeks confidential and sensitive law enforcement information the disclosure of which could compromise police investigations and the TARA training." Defendant refused to produce any documents in response to this request, referring Plaintiff to his official CPD training record, which "does not include any TARA training sessions or courses." (Ex. A – Def. Resp. to Request No. 19.)

6.　　On August 18, 2008, immediately after receiving Defendant's objections to Plaintiff's discovery requests, Plaintiff's counsel sent defense counsel correspondence pursuant to Rule 37 of the Federal Rules of Civil Procedure which addressed the objections to producing the TARA training documents. (8/18/08 email from Kevin Vodak to Kenneth Robling, attached as Ex. B.)

7.　　Prior to receiving Defendant's written discovery responses, Plaintiff obtained a copy of a PowerPoint presentation used at the City of Chicago's TARA training session in 2007, subsequent to Plaintiff's dismissal from his employment. This presentation purports to define terrorism and terrorist groups but also contains misconceptions of Muslim beliefs, identifies the Council on American-Islamic Relations as an extremist and terrorist group, and directs officers to be suspicious of certain types of behavior which are typically engaged in by Muslims and individuals with Middle Eastern national origins.

8.　　Plaintiff testified that he was not entirely clear if the anti-terrorism training that he attended in March 2005 was part of the TARA program, but he recalled being shown the video described in his Complaint. After searching through records at the Training Academy, defense

counsel ultimately discovered a training schedule which referred to an anti-terrorism training held on March 29, 2005, the same day identified in the Complaint.

9.　　Counsel for the parties conducted telephone conferences pursuant to Rule 37 on August 22, 2008, August 27, 2008, and September 11, 2008. (See 9/9/08 letter from Kevin Vodak to Kenneth Robling, attached as Ex. C.) As a result of these conferences, defense counsel has agreed to produce any videos related to September 11, 2001 that would have been shown at the March 29, 2005 anti-terrorism training session.

10.　　Plaintiff's counsel agreed to limit Request No. 19 to the TARA training sessions that sergeants and officers in District 12 would have received in 2006, prior to Plaintiff's termination on May 25, 2006. Defendant, however, refuses to produce any documents related to TARA, relying on the City's records indicating that Sgt. Kamenjarin only attended TARA in February 2006 and not May 2006. Defense counsel has also indicated that he intends to limit the TARA Technical Training Specialist's deposition testimony to attendance issues, thus precluding any discovery into the substance of the TARA program.

11.　　Based on the foregoing, Plaintiff's counsel has made good faith efforts to secure all responsive documents prior to filing this Motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.2.

## II.　Standard of Review

12.　　Parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. This rule reflects a liberal standard for discovery, where the courts consider relevancy to be "construed broadly to encompass any

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

**III.　　Plaintiff Remains Entitled to the Discovery Relating to TARA**

　　13.　　In response to Plaintiff's hostile work environment claims, Defendant raised an affirmative defense under Burlington Indus., Inc. v. Ellerth, 542 U.S. 742 (1998). (Def. Ans. Aff. Def. No. 3.) Plaintiff thus remains entitled to discover all information that relates to the training of City of Chicago police officers with respect to the treatment of Muslims, Middle Eastern individuals, and Arabs. See Cerros v. Steel Techs. Inc., 398 F.3d 944, 953 (7th Cir. 2005) ("[T]he enactment of an anti-harassment policy and the implementation of training sessions for employees is relevant . . . with respect to whether an employer had notice of harassment and whether it exercised reasonable care to prevent such harassment in the first instance"); see also Butta-Brinkman v. FCA Int'l Ltd., 164 F.R.D. 475, 476 (N.D. Ill. 1995) (compelling production of other complaints of sexual harassment as relevant to whether employer's anti-harassment policy was adequate).

　　14.　　The TARA training sessions that were conducted during the first five (5) months of 2006 directly relate to Plaintiff's hostile work environment claims, given the specific reference by Sgt. Kamenjarin and other officers in District 12 to this training that they attended. Plaintiff also has compelling evidence that the TARA training fostered hostile conditions for his employment due to the biased instructions contained in the TARA presentation given in 2007.

　　15.　　Defendant's reliance on its records indicating that Sgt. Kamenjarin attended TARA training in February 2006 remains misplaced. First, Defendant's training record for Plaintiff failed to reflect any anti-terrorism training in March 2005, but this proved to be erroneous. Second, even if Sgt. Kamenjarin only attended TARA training in February 2006, his

reference to this training in May 2006 places the training directly at issue in this case. Given the broad scope of discovery pursuant to Rule 26, Defendant must produce the requested TARA training documents and not preclude testimony into the substance of the program.

16. Plaintiff's § 1981 claim also requires him to establish that the City of Chicago intentionally discriminated against him based on the protected categories and that there was a policy or custom in place that led to this violation. A "conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amount[s] to intentional discrimination." Bohen v. East Chicago, 799 F.2d 1180, 1187 (7th Cir. 1986). If discovery reveals that Defendant adopted a training program that fostered the image of Muslims and Arabs as terrorists, Plaintiff may be able to show that Defendant ensured that his work conditions would be hostile. The TARA training materials thus directly relate to Plaintiff's § 1981 claims.

17. Defendant's attempt to invoke a privilege or preclude discovery into the TARA training materials based on the risk of compromising police investigations or the TARA training program remains unfounded and improper. Courts have regularly allowed discovery into investigative files and training materials when they relate to a plaintiff's civil rights claim. See Hollins v. City of Milwaukee, No. 05-CV-623, 2006 U.S. Dist. LEXIS 24169, at *5-7 (E.D. Wis. Mar. 24, 2006) (attached as Ex. D) (denying defendant's assertion that law enforcement strategies would be compromised in production of complete unredacted tactical training manual in civil rights case); Anderson v. Marion County Sheriff's Dep't, 220 F.R.D. 555, 563-68 (S.D. Ind. 2004) (denying defendant's invocation of law enforcement investigative privilege in Title VII suit to internal affairs investigative files for plaintiff and similarly situated individuals); see also Zhao v. City of New York, No. 07 Civ. 3636, 2007 U.S. Dist. LEXIS 91049, at *17-21

(S.D.N.Y. Dec. 4, 2007) (attached as Ex. E) (denying defendant's invocation of law enforcement privilege to training materials used by police department in interrogating suspects in civil rights action).

18. Should this Court entertain Defendant's invocation of the law enforcement investigatory privilege, Plaintiff meets all of the criteria for requiring production of the TARA training materials:

   a. "[T]he extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information." Anderson, 220 F.R.D. at 563. Such a concern does not exist in this matter, as the TARA training program does not involve the input of citizens.

   b. "[T]he impact upon persons who have given information of having their identities disclosed." Id. Defendant has not raised such a concern in this case, and the TARA training again focuses on instructions given to officers rather than citizen complaints.

   c. "[T]he degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure." Id. Disclosing the TARA training program will actually ensure that the program improves, as discrimination will no longer be fostered against Muslims and Arabs.

   d. "[W]hether the information sought is factual data or evaluative summary." Id. In civil rights cases, courts typically "require reports containing both factual and evaluative materials to be disclosed." Id. at 566. Especially when issues of intent need to be explored in Plaintiff's case, both data and summaries relating to the TARA training must be produced.

e. "[W]hether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question." Id. at 564. Plaintiff is not an actual or potential criminal defendant.

f. "[W]hether the investigation has been completed." Id. Such a factor does not pertain to the TARA training materials.

g. "[W]hether any interdepartment disciplinary proceedings have arisen or may arise from the investigation." Id. Such a factor does not pertain to the TARA training materials.

h. "[W]hether the plaintiff's suit is nonfrivolous and brought in good faith." Id. Defendant has never presented a Rule 11 motion in this matter, and Plaintiff's testimony is consistent with the allegations concerning the hostile work environment claims.

i. "[W]hether the information sought is available through other discovery or from other sources." Id. Plaintiff can only obtain all of the pertinent TARA training materials from Defendant.

j. "[T]he importance of the information sought to the plaintiff's case." Id. As explained above, the TARA training materials remain critical to Plaintiff's hostile work environment claims and disputing Defendant's affirmative defense under Ellerth.

19. Pursuant to the broad standard of discovery under Rule 26, Plaintiff remains entitled to the requested documents and information relating to the TARA training.

WHEREFORE, Plaintiff, ALA MOHAMMAD, respectfully requests that this Court grant this Motion to Compel and order the following:

A. Defendant must produce all material responsive to Request No. 19 with respect to the TARA training that District 12 sergeants and officers received during the first (5) months of 2006; and

B. Defendant cannot preclude witnesses from testifying with respect to the substance of the TARA training that Chicago Police sergeants and officers have received from March 2005 to the present; or

C. For such other relief that the Court deems proper and just.

                                                 Respectfully submitted,

                                                 /s/Kevin Vodak
                                                 Kevin Vodak
                                                 Attorney for Plaintiff

Attorney No. 6270773
Council on American-Islamic Relations, Chicago Chapter
(CAIR-Chicago)
28 East Jackson Boulevard, Suite 1410
Chicago, Illinois 60604
312.212.1520